IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SEAN TOMANY, Individually and as Administrator of the Estate of PATRICK TOMANY, deceased,** <br> 37 Crestdale Road <br> Glastonbury, CT 06033, <br>    Plaintiff, <br>   v. <br><br> **BROOKE KOCH, PA-C** <br> 1800 East Park Avenue <br> State College, PA 16803 <br>    and <br> **RODERICK CROSS, M.D.** <br> 1800 East Park Avenue <br> State College, PA 16803 <br>    and <br> **MOUNT NITTANY MEDICAL CENTER** <br> 1800 East Park Avenue <br> State College, PA 16803 <br>    and <br> **MOUNT NITTANY MEDICAL CENTER HEALTH SERVICES, INC.** <br> 1800 East Park Avenue <br> State College, PA 16803 <br>    and <br> **MOUNT NITTANY HEALTH SYSTEM d/b/a and/or a/k/a MOUNT NITTANY HEALTH** <br> 1800 East Park Avenue <br> State College, PA 16803 <br>    and <br> **CENTRE EMERGENCY MEDICAL ASSOCIATES, P.C.** <br> 1800 East Park Avenue <br> State College, PA 16803 <br><br>      Defendants. | **CIVIL ACTION** <br> No. <br><br><br> **JURY TRIAL DEMANDED** <br><br><br><br> **CIVIL ACTION COMPLAINT** |

## CIVIL ACTION COMPLAINT
## MEDICAL MALPRACTICE

1. Federal jurisdiction in this action is predicated upon diversity of citizenship under statutory authority of 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

2. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because (1) some or all defendants are residents of this judicial district and/or (2) the acts and omissions that form the subject matter of this action occurred in this judicial district.

3. For purposes of diversity under 28 U.S.C. § 1332, Defendants are all citizens and residents of the Commonwealth of Pennsylvania and Plaintiff is a citizen and resident of the State of Connecticut.

4. Plaintiff Sean Tomany is an adult individual and citizen of the State of Connecticut, residing at 37 Crestdale Road, Glastonbury, CT 06033.

5. Plaintiff Sean Tomany files this Complaint individually and as Administrator of the Estate of Patrick Tomany, deceased.

6. Letters of Administration were granted to Plaintiff Sean Tomany by the State of Connecticut Glastonbury–Hebron Court of Probate on January 12, 2022. (*See* Fiduciary's Probate Certificate, attached as Ex. A.)

7. Plaintiff's decedent, Patrick Tomany, was born on April 13, 2002 and died on August 30, 2021.

8. Plaintiff's decedent, Patrick Tomany, is survived by the following beneficiaries under the Wrongful Death Act, 42 Pa. C. S. § 8301:

    a.    Sean Tomany (Father)
            37 Crestdale Road
            Glastonbury, CT 06033

   b.  Jodi Tomany (Mother)
      37 Crestdale Road
      Glastonbury, CT 06033

  9.  Defendant Brooke Koch, PA-C ("PA Koch") is and was at all relevant times a physician's assistant duly licensed to practice medicine in the Commonwealth of Pennsylvania and providing medical care, treatment, and services therein. PA Koch maintained a medical practice, office, and principal place of business at 1800 East Park Avenue, State College, PA 16803. Plaintiff is asserting a professional liability claim against this Defendant for her own negligence. (*See* Certificate of Merit, attached as Ex. B.)

  10.  Defendant Roderick Cross, M.D. ("Dr. Cross") is and was at all relevant times a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania and providing medical care, treatment, and services within the field of emergency medicine. Dr. Cross maintained a medical practice, office, and principal place of business at 1800 East Park Avenue, State College, PA 16803. Plaintiff is asserting a professional liability claim against this Defendant for his own negligence and the negligence of PA Koch. (*See* Certificate of Merit, attached as Ex. C.)

  11.  Defendant Mount Nittany Medical Center is and was at all times material hereto a professional healthcare facility and corporation or other jural entity organized according to and/or existing under and pursuant to the laws of the Commonwealth of Pennsylvania, which operates, owns, maintains, and/or controls a hospital, health care facility, and provider of health care and health care services located at 1800 East Park Avenue, State College, PA 16803. Defendant Mount Nittany Medical Center engaged in the practice of medicine through its agents, apparent agents, ostensible agents, servants, partners, and/or employees, including Defendants PA Koch and Dr. Cross. Plaintiff is asserting professional liability claims against this Defendant for its own negligence and for the professional negligence of its agents, apparent agents, ostensible agents,

servants, partners, or employees, including Defendants PA Koch and Dr. Cross. (*See* Certificate of Merit, attached as Ex. D.)

12. Defendant Mount Nittany Medical Center Health Services, Inc. is and was at all times material hereto a professional healthcare facility and corporation or other jural entity organized according to and/or existing under and pursuant to the laws of the Commonwealth of Pennsylvania, which operates, owns, maintains, and/or controls a hospital, health care facility, and provider of health care and health care services located at 1800 East Park Avenue, State College, PA 16803. Defendant Mount Nittany Medical Center Health Services, Inc. engaged in the practice of medicine through its agents, apparent agents, ostensible agents, servants, partners, and/or employees, including Defendants PA Koch and Dr. Cross. Plaintiff is asserting professional liability claims against this Defendant for the professional negligence of its agents, apparent agents, ostensible agents, servants, partners, or employees, including Defendants PA Koch and Dr. Cross. (*See* Certificate of Merit, attached as Ex. E.)

13. Defendant Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health ("Mount Nittany Health") is and was at all times material hereto a professional healthcare facility and corporation or other jural entity organized according to and/or existing under and pursuant to the laws of the Commonwealth of Pennsylvania, which operates, owns, maintains, and/or controls a hospital, health care facility, and provider of health care and health care services located at 1800 East Park Avenue, State College, PA 16803. Defendant Mount Nittany Health engaged in the practice of medicine through its agents, apparent agents, ostensible agents, servants, partners, and/or employees, including Defendants PA Koch and Dr. Cross. Plaintiff is asserting professional liability claims against this Defendant for the professional negligence of its agents, apparent

agents, ostensible agents, servants, partners, or employees, including Defendants PA Koch and Dr. Cross. (*See* Certificate of Merit, attached as Ex. F.)

14. Defendant Centre Emergency Medical Associates, P.C. ("CEMA") is and was at all times material hereto a corporation, Professional Corporation, professional association, professional partnership, or other jural entity organized according to and existing under the laws of the Commonwealth of Pennsylvania and presently owns, maintains, operates and controls professional offices at, among other sites, 1800 East Park Avenue, State College, PA 16803. Defendant CEMA engaged in the practice of medicine through its agents, apparent agents, ostensible agents, servants, partners, and/or employees, including Defendants PA Koch and Dr. Cross. Plaintiff is asserting professional liability claims against this Defendant for the professional negligence of its agents, apparent agents, ostensible agents, servants, partners, or employees, including Defendants PA Koch and Dr. Cross. (*See* Certificate of Merit, attached as Ex. G.)

15. At all relevant times, Defendants and the actual agents, apparent agents, ostensible agents, servants, partners, parents, subsidiaries and/or employees identified herein were engaged in the practice of medicine in the provision of health care, treatment, and services, and held themselves out to the public, including Plaintiff's decedent, as skilled and competent health care providers and/or ancillary medical professionals, and were obligated to bring to bear in the practice of their professions the skill, knowledge, and care that they possessed, and to pursue their professions in accordance with reasonably safe and accepted standards of medicine and/or nursing within their respective specialties, to provide Plaintiff's decedent with reasonable, proper, competent, adequate and proper medical care, nursing care, treatment, and services and to avoid causing Plaintiff's decedent harm.

16. Plaintiff's decedent looked to and relied upon Defendants and the actual agents, apparent agents, ostensible agents, servants, partners, parents, subsidiaries and/or employees identified herein to provide competent health care, treatment, and services to Plaintiff's decedent.

17. At all relevant times, Defendant PA Koch was an employee, shareholder, partner, and/or actual, apparent, and/or ostensible agent of Defendants Dr. Cross, Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health, and/or CEMA, acting within the course and scope of her agency and/or employment relationships.

18. At all relevant times, Defendant Dr. Cross was an employee, shareholder, partner, and/or actual, apparent, and/or ostensible agent of Defendants Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health, and/or CEMA, acting within the course and scope of her agency and/or employment relationships.

19. At all times material hereto, some or all Defendants may have been agents of each other.

## OPERATIVE FACTS

20. As of August 26, 2021, Patrick Tomany ("Patrick") was a 19-year-old male about to begin his undergraduate studies at Pennsylvania State University.

21. On August 26, 2021 around 1:06 pm, Patrick presented to the Mount Nittany Medical Center Emergency Department.

22. Around 4:01 pm, Defendant PA Koch examined Patrick.

23. Defendant PA Koch noted the following in the History of Present Illness section of her ED Note: Patrick presented to the emergency department for evaluation of right buttock pain; he noticed the pain two days ago; the pain worsened the evening before and on this morning; he had taken Tylenol without much relief of the pain; the pain is in his right posterior buttock and

does not radiate anywhere; patient is concerned because he has a history of blood clots and protein C deficiency and is concerned he could have a DVT; patient is prescribed Eliquis twice a day, but does not take this regularly; typically, he only takes it a few times a week and over the past few weeks, he is only been taking about 1 dose per week; he had a 5.5 hour car ride about 1 week ago; and, he denies trauma to the leg.

24. Defendant PA Koch noted Patrick's history of DVT (deep vein thrombosis) and protein C deficiency.

25. Defendant PA Koch performed a physical examination and documented, "No edema to the left lower extremity noted. Tenderness to palpation of the left posterior glutes. No tenderness of the remainder of the left lower extremity. Full range of motion of the left lower extremity. Strength 5/5 throughout."

26. Notably, Defendant PA Koch's HPI conflicts with the physical examination as she noted Patrick complained of right buttock pain, but her physical examination describes her examination of the left buttock and lower extremity.

27. Defendant PA Koch ordered an "ultrasound of the right lower extremity venous" for the clinical history of "Right leg pain."

28. Radiologist Eric Vilbert, M.D. interpreted the ultrasound around 5:11 pm. Dr. Vilbert noted, "There is no sonographic evidence of deep venous thrombosis identified in the right lower extremity. The common femoral, superficial femoral and popliteal veins are patent and normally compressible." Dr. Vibert stated in his Impression, "There is no sonographic evidence of deep venous thrombosis identified in the right lower extremity."

29. Dr. Vilbert did not comment on the appearance of the right common iliac vein, as the right common iliac vein could not be visualized on the US of the lower extremity ordered by Defendant PA Koch.

30. Defendant PA Koch did not order a D-dimer test.

31. In the MDM Narrative written by Defendant PA Koch, she said:

> The patient is a 19-year-old male who presents to the emergency department for evaluation of right leg pain. Patient has a history of DVT and is concerned about this. An ultrasound of the right lower extremity was performed and reviewed by radiology which showed no DVT. Patient was reassured. He is prescribed Eliquis but admits that he does not take this as prescribed. Patient was advised that he should be taking all medications as prescribed. He was advised to discuss this with his primary care provider as he thinks that the medication can be discontinued, but I advised him not to do this until his PCP advised him he could. He was advised to return here for any concerns. He verbalized understanding of my assessment and treatment plan and was discharged home in good condition.

32. Then, Defendant PA Koch inaccurately and incorrectly diagnosed Patrick with "Pain in right leg."

33. Patrick presented to Mount Nittany Medical Center ED with right buttock pain, not leg pain.

34. Defendant PA Koch did not rule out thrombus of the common iliac vein.

35. Defendant PA Koch did not order a CT venography to rule out thrombus of the internal iliac veins.

36. Around 6:21 pm, Defendant PA Koch discharged Patrick without any intervention despite failing to diagnose any condition that explained Patrick's right buttock pain.

37. Defendant Dr. Cross electronically signed Defendant PA Koch's ED Note at 2:42 am on August 27, 2021.

38. Defendant Dr. Cross adopted all of Defendant PA Koch's findings, diagnosis, and plan without making any changes to Defendant PA Koch's findings, diagnosis, or plan.

39. Sadly, but not surprisingly given Patrick's presentation on August 26, in the morning of August 30, 2021, Patrick developed right thigh pain.

40. Patrick informed his resident advisor that he was experiencing right thigh pain, he thought it was a blood clot, and he needed an ambulance to go to the hospital. The resident adviser called 911.

41. Between the time the EMS personnel were dispatched and arrived at Patrick's dormitory, Patrick suffered two seizures.

42. Around 7:52 am, the EMS personnel found Patrick lying supine on the ground incontinent of urine in the hallway of his dormitory.

43. As of 7:53 am, Patrick was responsive to voice, CAO to his name, and had a weak radial pulse.

44. Around 7:56 am, EMS personnel observed Patrick suffer another seizure that lasted ten seconds, after which Patrick stated, "I just feel sleepy."

45. Around 7:59 am, EMS personnel moved Patrick to the ambulance, where he began experiencing snoring respirations and showing signs of cyanosis. At this time, Patrick was responsive to pain.

46. Around 8:03 am, Patrick's ability to breath began to decompensate and EMS personnel started supplemental oxygen via bag-valve-mask.

47. Around 8:05 am, Patrick became unresponsive.

48. Around 8:08 am, Patrick was intubated.

49. Around 8:15 am, EMS personnel began transporting Patrick to Mt. Nittany Medical Center.

50. Around 8:20 am, EMS personnel began using the LUCAS Chest Compression System to administer CPR to Patrick.

51. Around 8:24 am, EMS personnel handed off Patrick's care to Defendant Dr. Cross and the code team at Mount Nittany Medical Center ED.

52. The Mount Nittany Medical Center code team started cardiopulmonary resuscitation efforts around 8:32 am at which time Patrick had no pulse.

53. The Mount Nittany Medical Center code team attempted to resuscitate Patrick for approximately 44 minutes.

54. Patrick was pronounced dead at 9:16 am on August 30, 2021.

55. Defendant Dr. Cross informed Plaintiff Sean Tomany of Patrick's death.

56. Defendant Dr. Cross documented the call by stating, "He further expressed frustration regarding the patient's visit on Friday regarding his leg pain and that he was sent home. I did explain that all I could speak to related to that visit is that the patient's formal ultrasound was negative."

57. Although Defendant Dr. Cross signed the ED Note from Patrick's ED presentation on August 26, Defendant Dr. Cross was unfamiliar with the details of Patrick's presentation that day.

58. An autopsy was performed on Patrick. The autopsy revealed that Patrick died from a saddle pulmonary embolism that originated from a thrombus of the right common iliac vein.

59. Defendants' negligence, jointly and severally, was the direct and proximate cause of Patrick's injuries and death.

60. Defendants' negligence, jointly and severally, increased the risk of harm that Patrick would die from a pulmonary embolism, which he did.

61. Defendants' negligence, jointly and severally, directly and proximately caused Patrick to suffer the following injuries and damages:

    a. Pulmonary embolism;

    b. Progressive thrombus of the right common iliac vein;

    c. Buttock pain;

    d. Leg pain;

    e. Seizures;

    f. Cardiac arrest;

    g. Cardiopulmonary arrest;

    h. Anxiety;

    i. Emotional distress;

    j. Humiliation;

    k. Fear and fright;

    l. Feeling of impending doom;

    m. Severe pain and suffering;

    n. Loss of life's pleasures;

    o. Lost wages;

    p. Loss of future earning capacity;

    q. Funeral expenses;

    r. Economic loss;

    s. Death; and,

t.  All economic and non-economic injuries and damages compensable under Pennsylvania law based on the facts of this case.

62. The injuries and damages that are the subject of this Complaint were caused solely and exclusively by Defendants' negligent acts and omissions, individually, jointly and severally, and Defendants' agents and/or employees, as specifically described herein, and were not caused or contributed in any way by Plaintiff or Plaintiff's decedent.

## COUNT I – NEGLIGENCE

**Plaintiff**
**v.**
**Defendants Brooke Koch, PA-C, Roderick Cross, M.D., Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C.**

63. The previous paragraphs are incorporated by reference as though set forth fully herein.

64. Defendant PA Koch had a duty to exercise due care and to conform to the standard of care.

65. Defendant PA Koch is liable for her negligent acts and omissions.

66. Defendants Dr. Cross, Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C. are vicariously and derivatively liable for the negligent acts and omissions of Defendant PA Koch.

67. The negligent conduct of Defendant PA Koch for which she is liable and for which Defendants Dr. Cross, Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C. are vicariously and derivatively liable consisted of one or more of the following:

      a.      Failing to diagnose a deep venous thrombosis on August 26, 2021;

      b.      Failing to order appropriate laboratory studies, including d-dimer study, to rule out deep venous thrombosis;

      c.      Failing to adequately rule out deep venous thrombosis as a diagnosis on August 26, 2021;

      d.      Failing to order necessary imaging to rule out deep venous thrombosis on August 26, 2021;

      e.      Failing to consider iliac vein thrombus as a diagnosis on August 26, 2021;

      f.      Failing to recognize that a lower extremity US would not and did not rule out a thrombus in the iliac vein;

      g.      Failing to prescribe and/or administer therapeutic anti-coagulants to treat Patrick's iliac vein thrombus on August 26, 2021;

      h.      Informing Patrick on August 26, 2021 that he did not have a deep venous thrombosis; and,

      i.      Discharging Patrick on August 26, 2021 without a diagnosis.

68.    The carelessness and negligence of Defendant PA Koch, and through her, Defendants Dr. Cross, Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C., in her medical management, care, and treatment of Patrick, as set forth herein, was a substantial contributing factor that increased the risk of harm and/or caused the injuries and damages suffered by Plaintiff's decedent and Plaintiff.

**WHEREFORE**, Plaintiff demands compensatory damages against all Defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

## COUNT II – NEGLIGENCE

**Plaintiff**

**v.**

**Defendants Roderick Cross, M.D., Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C.**

69. The previous paragraphs are incorporated by reference as though set forth fully herein.

70. Defendant Dr. Cross had a duty to exercise due care and to conform to the standard of care.

71. Defendant Dr. Cross is liable for his negligent acts and omissions.

72. Defendants Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C. are vicariously and derivatively liable for the negligent acts and omissions of Defendant Dr. Cross.

73. The negligent conduct of Defendant Dr. Cross for which he is liable and for which Defendants Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C. are vicariously and derivatively liable consisted of one or more of the following:

    a. Failing to diagnose a deep venous thrombosis on August 26, 2021;

    b. Failing to order appropriate laboratory studies, including d-dimer study, to rule out deep venous thrombosis;

    c. Failing to adequately rule out deep venous thrombosis as a diagnosis on August 26, 2021;

    d. Failing to order necessary imaging to rule out deep venous thrombosis on August 26, 2021;

    e.    Failing to consider iliac vein thrombus as a diagnosis on August 26, 2021;

    f.    Failing to recognize that a lower extremity US would not and did not rule out a thrombus in the iliac vein;

    g.    Failing to prescribe and/or administer therapeutic anti-coagulants to treat Patrick's iliac vein thrombus on August 26, 2021;

    h.    Informing Patrick on August 26, 2021 that he did not have a deep venous thrombosis;

    i.    Discharging Patrick on August 26, 2021 without a diagnosis;

    j.    Adopting PA Koch's findings, diagnosis, and plan/recommendations;

    k.    Failing to adequately review PA Koch's evaluation of and treatment of Patrick on August 26, 2021; and,

    l.    Upon reviewing PA Koch's note, failing to contact Patrick and instruct him to return to the hospital so he could be properly evaluated to rule out deep venous thrombosis.

74.    The carelessness and negligence of Defendant Dr. Cross, and through him, Defendants Mount Nittany Medical Center, Mount Nittany Medical Center Health Services, Inc., Mount Nittany Health System d/b/a and/or a/k/a Mount Nittany Health, and Centre Emergency Medical Associates, P.C., in her medical management, care, and treatment of Patrick, as set forth herein, was a substantial contributing factor that increased the risk of harm and/or caused the injuries and damages suffered by Plaintiff's decedent and Plaintiff.

**WHEREFORE**, Plaintiff demands compensatory damages against all Defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

## COUNT III – CORPORATE (DIRECT) NEGLIGENCE

**Plaintiff**
**v.**
**Defendant Mount Nittany Medical Center**

75. The previous paragraphs are incorporated by reference as though set forth fully herein.

76. The corporate (direct) negligence of Defendant Mount Nittany Medical Center arising out of the diagnosis, care, and treatment of Plaintiffs' decedent consists of one or more of the following:

    a. Failing to formulate, adopt, and/or enforce adequate rules, policies, and/or procedures for the diagnosis and treatment of deep venous thrombosis;

    b. Failing to formulate, adopt, and/or enforce adequate rules, policies, and/or procedures for the diagnosis and treatment of thrombus in the iliac vein;

    c. Failing to formulate, adopt, and/or enforce adequate rules, policies, and/or procedures to rule out thrombus in the iliac vein;

    d. Failing to formulate, adopt, and/or enforce adequate rules, policies, and/or procedures to order and/or perform imaging and lab work, including testing for d-dimer level, when deep venous thrombosis is suspected in a patient;

    e. Failing to select and/or retain physicians and/or physician assistants competent in the diagnosis and treatment of patients with signs and symptoms of and at risk for deep venous thrombosis, like Plaintiff's decedent;

    f. Failing to have and/or enforce adequate policies and/or procedures relating to the diagnosis and treatment of patients with signs and symptoms of and at risk for deep venous thrombosis, like Plaintiff's decedent;

    g. Failing to have and/or enforce adequate policies and/or procedures relating to a supervising physician's review of the treatment rendered to a patient like Plaintiff's decedent by a lower level provider;

77. Prior to the care and treatment of Plaintiff's decedent, Defendant Mount Nittany Medical Center had actual and/or constructive knowledge of the failures set forth in the preceding paragraph and subparagraphs.

78.     The carelessness and negligence of Defendant Mount Nittany Medical Center, as set forth herein, was a substantial contributing factor that increased the risk of harm and/or caused the injuries and damages suffered by Plaintiff's decedent and Plaintiff.

**WHEREFORE**, Plaintiff demands compensatory damages against all Defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

**FIRST CAUSE OF ACTION – WRONGFUL DEATH**

**Plaintiff**
**v.**
**All Defendants**

79.     The preceding paragraphs are incorporated by reference as though fully set forth herein at length.

80.     Plaintiff Sean Tomany, Administrator of the Estate of his son, Patrick Tomany, deceased, brings this this action under and by virtue of the Wrongful Death Act of the Commonwealth of Pennsylvania.

81.     Under the Wrongful Death Act, Patrick Tomany, deceased, left the following beneficiaries under the Wrongful Death Act, on behalf of whom this action is brought:

   a.   Sean Tomany (Father)
        37 Crestdale Road
        Glastonbury, CT 06033

   b.   Jodi Tomany (Mother)
        37 Crestdale Road
        Glastonbury, CT 06033

82.     As a result of the negligent and careless acts and omissions of Defendants, as set forth above, Plaintiff's decedent, Patrick Tomany, was caused grave injuries and death resulting in the entitlement to damages by the above-named beneficiaries under the Wrongful Death Act.

83. All beneficiaries under the Wrongful Death Act have been duly informed of this action.

84. Plaintiff claims the full measure of damages set forth in the Wrongful Death Act and supporting case law.

85. As a direct and proximate result of Defendants' conduct set forth above, individually, jointly and severally, the Wrongful Death Act beneficiaries have suffered the loss of services, society, comfort, and companionship of their child.

86. As a direct and proximate result of Defendants' conduct set forth above, individually, jointly and severally, the Wrongful Death Act beneficiaries have suffered pecuniary loss in the form of lost services, maintenance, entertainment, and gifts.

87. As a direct and proximate result of Defendants' conduct set forth above, individually, jointly and severally, the Wrongful Death Act beneficiaries have experienced profound emotional and psychological loss as a result of the loss of their child.

**WHEREFORE**, Plaintiff demands compensatory damages against all Defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

### SECOND CAUSE OF ACTION – SURVIVAL ACTION
**Plaintiff**
v.
**All Defendants**

88. The preceding paragraphs are incorporated by reference as though fully set forth herein at length.

89. As a result of the negligent acts and omissions of all Defendants, Plaintiff's decedent, Patrick Tomany, was caused grave injuries and death resulting in the entitlement to damages by the Estate of Patrick Tomany, deceased, under the Survival Act of the Commonwealth

of Pennsylvania and decisional law.

90. Plaintiff Sean Tomany, Administrator of the Estate of his son, Patrick Tomany, deceased, brings this Survival Action on behalf of the Estate of his son, Patrick Tomany, deceased, and claim the full measure of damages under the Survival Act and Rule 223.3 of the Pennsylvania Rules of Civil Procedure.

**WHEREFORE**, Plaintiff demands compensatory damages against all Defendants, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER, PC**

Date: June 27, 2023   By: _____
SHANIN SPECTER, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHANIN.SPECTER@KLINESPECTER.COM
BRADEN.LEPISTO@KLINESPECTER.COM
Attorney I.D. Nos.: 28895/313586
1525 Locust Street
Philadelphia, PA  19102
Telephone: (215) 772-1000
*Attorneys for Plaintiff*